UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOOJAN MIRBAHA *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> MICHAEL POMPEO *et al.*, <br><br> *Defendants*. | Civil Action No. 20-299 (TJK) |

**MEMORANDUM OPINION**

Moojan Mirbaha and Nima Ebrahimi brought this action against various federal officials, seeking to compel the Government under the Administrative Procedure Act (APA) or the Mandamus Act to finish processing Ebrahimi's request for a waiver from Presidential Proclamation 9645, which otherwise bars him from receiving an immigration visa to join his fianceé in the United States. Before the Court is the Government's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. For the reasons explained below, the Court finds that Plaintiffs have established subject matter jurisdiction, but they have failed to state a claim. Thus, the Court will grant the motion and dismiss the case.

**I. Background**

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, governs admission of aliens into the United States. Admission normally requires a valid immigrant or nonimmigrant visa. *See* 8 U.S.C. §§ 1181, 1182, 1203. Once a visa application is "completed and executed before a consular officer," the "consular officer must issue the visa, refuse the visa . . . [or] discontinue granting the visa." 22 C.F.R. § 42.81(a). Congress has delegated to the President broad authority to exclude aliens under the INA:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f).

On September 24, 2017, President Trump signed Proclamation No. 9645, 82 Fed. Reg. 45,161 (2017) ("Procl.") under this authority.  The Proclamation placed entry restrictions on Iranian citizens, among others, because the Secretary of Homeland Security found that country's identity-management protocols and information-sharing practices relating to the screening of those seeking admission to the United States inadequate.  Procl. § 2(b)(ii).  Still, the Proclamation allows for case-by-case waivers for foreign nationals who show that (i) denying entry would cause undue hardship, (ii) entry would be in the national interest, and (iii) entry would not threaten the national security or public safety.  *Id.* § 3(c)(i).

Ebrahimi is an Iranian national who resides in Tehran, Iran.  ECF No. 1 ("Compl.") ¶ 6.  He is engaged to be married to Mirbaha, a naturalized United States citizen who resides in Texas.  *Id.* ¶ 13, 22.  The couple met in 2006 while studying in Iran, but after completing her associate's degree, Mirbaha moved to the United States and the two lost touch.  *Id.* ¶ 12.  Mirbaha and Ebrahimi reconnected in 2016 and became engaged on September 20, 2017.  *Id.* ¶¶ 19, 22.  On December 4, 2017, Mirbaha filed an I-129F, Petition for Alien Fiancé, with the United States Citizenship and Immigration Services (USCIS), on behalf of Ebrahimi.  *Id.* ¶ 23.  Pursuant to 8 C.F.R. § 214.2(k), filing that document is necessary in order to obtain a K-1 Visa, which allows the fiancé of a U.S. citizen to travel to the United States.

On July 12, 2018, USCIS granted Ebrahimi the Petition for Alien Fiancé and ultimately transferred his visa application to the U.S. Embassy in Abu Dhabi for processing. *Id*. ¶ 24, 27. On October 21, 2018, Ebrahimi attended an immigrant visa interview at that U.S. Embassy. *Id*. ¶ 30, 31. In accordance with the Proclamation, the consular officer refused the immigrant visa application under INA § 212(f), 8 U.S.C. § 1182(f) because Ebrahimi is an Iranian national. ECF No. 6-1, Declaration of Chloe Dybdahl ("Dybdahl Decl.") ¶ 4. But Ebrahimi requested a waiver from the Proclamation and submitted documentation to support his claim that he met its criteria. Compl. ¶ 31. On November 26, 2018, the consular officer made a preliminary determination that Ebrahimi met two of the three requirements and is in "consultation with the Visa Office for interagency review" to determine whether Ebrahimi's entry "could pose a threat to national security or public safety." Dybdahl Decl. ¶ 5.

Ebrahimi's request for a waiver is "undergoing consideration" and his application for a visa "remains refused in accordance with the Proclamation." *Id*. ¶ 6. He and Mirbaha filed this action in February 2020, about sixteen months after he requested the waiver. They seek to compel the Government under the APA or the Mandamus Act to finish processing Ebrahimi's waiver, thereby clearing the way for him to be eligible for the immigration visa. Later that year, the Government moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* ECF No. 6 ("MTD Mem.").

**II.     Legal Standard**

"When reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court 'assumes the truth of all material factual allegations in the complaint and construes the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020)

3

(quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (alterations omitted)). The plaintiff bears the burden of establishing subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To "survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Bagherian*, 442 F. Supp. 3d at 92 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court need not accept legal conclusions unsupported by factual allegations. *Id*. at 679. In deciding a motion under Rule 12(b)(6), a court may consider the factual allegations in the complaint, documents attached as exhibits, or documents on which the plaintiff's complaint necessarily relies, even if the defendant is the one to produce the document through its motion to dismiss. *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011). Courts may also consider "matters of which we may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

**III.    Analysis**

    **A.    Subject Matter Jurisdiction**

In arguing against subject matter jurisdiction here, the Government contends both that consular nonreviewability applies and that Ebrahimi's case is moot. Neither argument is persuasive.

1.     **The Consular Nonreviewability Doctrine**

The Government first argues the doctrine of consular nonreviewability bars review of Plaintiffs' claims. MTD Mem. at 7. Under that doctrine, "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). This jurisdictional bar, however, "does not apply where the government has not made a final visa decision." *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017).

The consular officer in this case, relying on the Proclamation, refused Ebrahimi's visa application. Dybdahl Decl. ¶ 4. In a typical case, the doctrine prevents judicial review of such a refusal. *See Aboutalebi v. Dep't of State*, No. 19-cv-2605, 2019 WL 6894046, at *5 (D.D.C. Dec. 18, 2019) (no subject matter jurisdiction to review denial of visa). But here, the consular officer then began the process of considering whether to grant a waiver. Dybdahl Decl. ¶¶ 4–6. And for their part, Plaintiffs represent they are not seeking to review the original decision. ECF No. 8 ("Opp'n") at 2. Thus, the question is whether the doctrine bars the Court from reviewing the claims Plaintiffs bring, the gravamen of which is that the Government has failed to timely process Ebrahimi's request for a waiver.

There remains some question about whether, under these circumstances, the original visa decision is final, and thus subject to the doctrine of consular non-reviewability.[1] But "[e]very

---

[1] Compare *Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *3 (D.D.C. July 29, 2020) ("where a plaintiff's visa application has been refused, but he remains under consideration for a waiver from the same Presidential Proclamation, 'the [visa] decision is not final' and consular nonreviewability is thus inapplicable") (collecting cases) with *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020) ("[T]he doctrine of consular nonreviewability prevents this Court from reviewing the government's denial of the . . . underlying visa applications," even when "waiver applications are still in 'administrative processing.'").

judge in this District who has considered the . . . question has held that the consular nonreviewability doctrine does not apply to the waiver process so long as the government has not made a final decision whether to grant or deny the waiver." *Kangarloo v. Pompeo*, No. 20-cv-354, 2020 WL 4569341, at *3 (D.D.C. Aug. 7, 2020) (collecting cases). Thus, the consular nonreviewability doctrine does not bar Plaintiffs' claims.

### 2. Mootness

The Government also argues that Plaintiffs' claim to require his visa application to be adjudicated is moot because Ebrahimi's visa has already been denied. MTD Mem. at 6–7. But fundamentally, Plaintiffs do not seek to challenge the original decision to refuse Ebrahimi's visa, they seek to compel the processing of his waiver request, which would clear the way for his visa application to be granted. *See* Compl. ¶ 59. Ebrahimi's request for a waiver remains under consideration, even if his application remains refused at present. Id. ¶ 52; Dybdahl Decl. ¶ 6. Thus, events have not "so transpired that [a] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002). In other words, because an "order from this Court requiring defendants to process [his] waiver would affect the parties' rights . . . the case is not moot." *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020).

### B. The Merits

Turning to the merits, the Court agrees with the Government that Plaintiffs have not stated a claim under the APA or for mandamus, and that the case must be dismissed.

1. **APA Claim**

Plaintiffs allege that the Government's delay in adjudicating Ebrahimi's waiver violates the APA, which requires agencies to "conclude" matters presented to them "within a reasonable time." 5 U.S.C. § 555(b); *see* Compl. ¶ 59.  Moreover, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see* Compl. ¶ 70.  The Government argues that Plaintiffs failed to state a claim under the APA because they cannot show the State Department has unreasonably delayed its processing of Ebrahimi's waiver request.  MTD Mem. at 12–15.

The Government's argument turns on whether Plaintiffs have "alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami*, 2020 WL 1308376, at *7 n.6.  The test to determine whether an agency action has been unreasonably delayed is the six-factor test the D.C. Circuit established in *Telecomm. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*").  Under *TRAC*, courts must consider:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 79–80 (cleaned up).  "[I]n cases like this one involving claims of unreasonably delayed waiver determinations, the *TRAC* factors have been generally employed at the motion to dismiss stage to determine whether a plaintiff's 'complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'" *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020) (quoting *Ghadami*, 2020 WL 1308376, at *7 n.6) (collecting cases).

The first factor is the most important, *In re Core Comms., Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), and it—along with the second factor—favors the Government.  As many courts have recognized, "Congress has supplied no timeline for processing waiver applications," *Didban*, 435 F. Supp. 3d at 176, and it "has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017); *Sarlak*, 2020 WL 3082018, at *5 (citing same).  And as discussed more below, courts in this District have found that it is not unreasonable under the APA for the Government to take between two and three years to adjudicate waivers to Proclamation 9645.  *See Sarlak*, 2020 WL 3082018, at *6 ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide.") (citing *Skalka*, 246 F. Supp. 3d at 154).

Plaintiffs argue that when considering these timing factors, the Court should weigh the internal operating procedures established by the agency, which show that it should be possible to process his waiver much more quickly.  Opp'n at 7.  They point to a new system implemented by the State Department in July 2019 that allows it to conduct national security and public safety inquiries *before* interviewing a visa applicant.  *Id.*; *see also* ECF No. 1-2, Ex. P, Testimony of Dep. Ass't Sec'y Edward Ramotowksi to H. Judiciary Comm. Subcomm. on Immigration & Citizenship and Foreign Affairs Comm. Subcomm. on Oversight & Investigations (Sep. 24,

2019) at 3 ("Ramotowski Test.").[2]  And the new system supposedly allows the Department to issue a waiver "within days of the application" as long the "security check done prior to the interview not show any concerns."  Ramotowski Test. at 3.  This change in capability, Plaintiffs argue, shows that the Government is unreasonably delaying Ebrahimi's waiver request because "the Department of State itself would have anticipated that Plaintiffs' visa application would have been adjudicated by the end of 2019 or shortly thereafter."  Opp'n at 7.

But this testimony, standing alone, does little to assist plaintiffs like Ebrahimi, as many courts in this District have already found.  *See, e.g., Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *6 (D.D.C. July 29, 2020); *Sarlak*, 2020 WL 3082018, at *5 (noting this evidence "suggests that [plaintiff's] two-year wait may be unusual," but not that it is "unreasonable").  The testimony does not suggest that Ebrahimi is being treated differently than other similarly situated waiver applicants.  Indeed, the testimony "support[s] the Government as [it] show[s] that the new automated vetting process is enabling the Government to work through the backlog of waiver applications."  *Didban*, 435 F. Supp. 3d at 177 n.5.  In the end, the testimony does not show that in processing his waiver, the Government is violating any statutory timetable or agency procedures.

The third and fifth factors, however, weigh in Plaintiffs' favor.  Mirbaha and Ebrahimi have been separated for much of their engagement and wish to be married and live in the United States together.  ECF No. 1-2 Ex. A ("Mirbaha Affidavit") ¶ 12.  Most urgently, they also wish to conceive a child.  *Id.* ¶ 11.  And Mirbaha has been diagnosed with a medical condition that,

---

[2] Courts may take judicial notice of congressional testimony because the testimony is "not subject to reasonable dispute."  Fed. R. Evid. 201(b); *see also Didban*, 435 F. Supp. 3d at 177 n.5 (taking judicial notice of same congressional testimony).

9

according to her doctor, requires that she and Ebrahimi pursue parenthood "sooner rather than later." *See* Compl. ¶ 48; ECF No. 1-2 at 49. Ebrahimi's inability to travel to and live in the United States has indefinitely delayed the couple's plans to start a family and threatens Mirbaha's ability to ever conceive a child with Ebrahimi. This situation has, quite understandably, distressed them as they await a decision on the waiver that would allow them to start a family together in the United States. Mirbaha Affidavit ¶¶ 12–15.

The fourth factor, which requires accounting for the effects of expedited action on "agency activities of equal or greater priority," favors the Government. *Ghadami*, 2020 WL 1308376, at *9. Ordering the Government to process Ebrahimi's waiver request is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Skalka*, 246 F. Supp. 3d at 154. Thus, delays caused by limited agency resources do not lend themselves to "judicial 'reordering[s] [of] agency priorities.'" *Bagherian*, 442 F. Supp. 3d at 96 (alterations in original) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)); *see also Sarlak*, 2020 WL 3082018, at *6 (collecting cases). For these reasons, the D.C. Circuit has looked with disfavor on courts placing a plaintiff like Ebrahimi "at the head of the queue" when doing so would "simply move[ ] all others back one space and produce[] no net gain." *In re Barr Labs.*, 930 F.2d at 75; *see also Ghadami*, 2020 WL 1308376, at *9 (quoting *In re Barr Labs.* for same proposition); *Bagherian*, 442 F. Supp. 3d at 95–96 (same).

The sixth factor does not apply because Plaintiffs make "no allegations regarding the Government's motivations." *Didban*, 435 F. Supp. 3d at 177.

Applying these factors, although it is hardly a slam-dunk for the Government, the Court ultimately concludes that Plaintiffs have not stated a claim for unreasonable delay under the APA. Ebrahimi's request for a waiver has been pending since October 2018, about twenty-seven

months. Courts in this District have found waiver-adjudication delays of similar or greater length reasonable. *Zandieh*, 2020 WL 4346915, at *6 (twenty-nine months); *Sarlak*, 2020 WL 3082018, at *6–7 (two years); *Ghadami*, 2020 WL 1308376, at *8, 11 (twenty-five months); *Bagherian*, 442 F. Supp. 3d at 95–96 (twenty-five months); *Didban*, 435 F. Supp. 3d at 176–77 (two years). Further, several of this District's courts have noted that delays between three to five years are "often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (quoting *Yavari v. Pompeo*, No. 19-cv-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)).

The Court sympathizes with the delay that Mirbaha and Ebrahimi have endured, and by reaching this conclusion, it does not mean to minimize the impact of that delay on their lives and their ability to start a family. Under these circumstances, the Court is troubled by the length of the delay, and echoes the view that "courts, facing growing delays, may well eventually need to set a point at which reasonableness ends." *Zandieh*, 2020 WL 4346915, at *6. The Court expects the Government to make progress on its backlog. *See Ghadami*, 2020 WL 1308376, at *9 (reaching same outcome but encouraging Government to "devote the resources . . . needed to evaluate the many claims for waiver expeditiously").

### 2. Mandamus Claim

Plaintiffs' mandamus claim fails for the same reason as their APA claim. To show entitlement to mandamus, a plaintiff "must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n. v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). The standard for reviewing agency delay is "the same under both § 706(1) of the APA and the Mandamus Act." *Bagherian*, 442 F. Supp. 3d at 96 (quoting *Skalka*, 246 F. Supp. 3d at 152). Thus, because the Court has concluded that a twenty-seven-month delay is not

unreasonable under these circumstances, it cannot order the Government to take any action via the mandamus route.

## IV. Conclusion

For all these reasons, Defendants' Motion to Dismiss, ECF No. 6, will be **GRANTED**. A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: January 19, 2021